IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ETHAN AUTREY, etc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 20-0572-WS-MU |
| | ) |
| HARRIGAN LUMBER CO., INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This FLSA matter is before the Court on the parties' joint motion for conditional certification, preliminary approval of collective action settlement, and distribution of notice. (Doc. 36). The motion is supported by a brief, (Doc. 37), and the parties' executed settlement agreement. (Doc. 35).[1]

The named plaintiff brought this action against the entity defendant and two individual defendants under the FLSA. The sole violation asserted in the complaint, (Doc. 1), is that the defendants paid the non-exempt plaintiff and other similarly situated employees non-discretionary "gain share" bonuses when the sawmill stayed under budget and produced a certain amount of lumber, but failed to include the value of such bonuses in determining the employees' regular rate of pay for purposes of calculating the overtime rate, resulting in an underpayment of overtime compensation.

**A. Conditional Certification.**

"An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of

---

[1] The parties' joint motion to seal the settlement agreement, (Doc. 34), is **granted**.

himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b) (emphasis added). The FLSA thus allows the maintenance of a collective action, and notice to potential class members, if the represented employees are "similarly situated" to the named plaintiffs. *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).[2]

The Eleventh Circuit has recommended that trial courts consider certification under Section 216(b) in two stages. "The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision — usually based only on the pleadings and any affidavits which have been submitted — whether notice of the action should be given to potential class members." *Hipp*, 252 F.3d at 1218 (internal quotes omitted). "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* at 1218.

At the initial stage, "[t]he plaintiffs bear the burden of demonstrating a reasonable basis for their claim of class-wide discrimination." *Grayson v. K Mart*, 79 F.3d 1086, 1097 (11th Cir. 1996) (internal quotes omitted). "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal quotes omitted). "[T]he district court should satisfy itself that there are other employees ... who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (internal quotes omitted).

---

[2] Section 216(b) applies to actions under the Age Discrimination in Employment Act ("ADEA"), and cases (such as *Hipp*) construing Section 216(b) in the ADEA context apply equally to cases brought under the FLSA. *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1014 n.1 (11th Cir. 2007).

Based on the complaint and the parties' presentation, the Court finds that all members of the proposed collective action are similarly situated to the named plaintiff and that the requirements for conditional certification under governing law are satisfied. Accordingly, the motion for conditional certification of a collective action is **granted**. The following class is conditionally certified:

> All hourly-paid employees who earned a gainshare bonus in connection with work performed for Harrigan Lumber Co., Inc. in any week in which they worked more than forty hours between November 25, 2018 and November 25, 2020.

### B. Preliminary Approval of Settlement.

The Court has previously concluded that a proposed FLSA settlement may be preliminarily approved prior to the issuance of notice. *Mygrant v. Gulf Coast Restaurant Group, Inc.*, 2019 WL 4620367 at *2-3 (S.D. Ala. 2019). In order to approve a proposed settlement, the Court must be satisfied that it represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).

#### 1. Attorney's fee.

The settlement agreement calls for creation of a common fund of $73,000, out of which all claims, a service award, and all attorney's fees and costs will be paid. Forty percent of this fund is allocated to attorney's fees, with an additional $1,405 allocated to incurred costs. (Doc. 35 at 7; Doc. 37 at 7, 8).[3] Two percent of the fund, or $1,460, is allocated to a service award to the plaintiff. (Doc. 35 at 7; Doc. 37 at 3). The remaining $40,935 is allocated to payment of claims of the plaintiff and the universe of potential opt-in plaintiffs. (Doc. 35 at 7).[4]

---

[3] The parties identify $30,605 as the amount of fees, (Doc. 37 at 7), but 40% of $73,000 is $29,200. The larger figure apparently is the sum of fees and costs.

[4] The slightly larger figure in the parties' brief, (Doc. 37 at 3), is incorrect.

The parties justify a 40% attorney's fee as consistent with counsel's fee agreement with the plaintiff, and they cite three sister court decisions around the country upholding a 40% award in a settled FLSA case. (Doc. 37 at 7-8). Two of those decisions offered no explanation for their conclusion that a 40% fee was fair and reasonable, and the third relied only on a state bar rule permitting a 40% fee in any case in which an answer has been filed or an arbitrator demanded.

Opinions that – contrary to those cited by the litigants – reject requests for a 40% fee in a settled FLSA case are not difficult to find. *E.g., Miller v. Bravura Information Technology Systems, Inc.*, 2019 WL 12338331 at *3-4 (S.D. Tex. 2019); *Grayson v. Madison County*, 2019 WL 11583451 at *2 (W.D. Tenn. 2019); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509 at *5-8 (S.D. Ohio 2019); *Jones v. JGC Dallas LLC*, 2014 WL 7336889 at *1-2 (N.D. Tex. 2014); *cf. Coulter-Owens v. Rodale, Inc.*, 2016 WL 5476490 at *5 (E.D. Mich. 2016) (a 40% attorney's fee in a settled FLSA case was "eyebrow-raising"). More importantly, the Eleventh Circuit has construed the FLSA to preclude courts, when reviewing settlement agreements, from approving fee awards based on nothing more than the existence of a contingency fee agreement:

> FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement. FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. …. To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.

*Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009).

This Court has indicated that judicial review of a fee award is unnecessary when it is clear that no conflict of interest tainted the amount of the plaintiff's and opt-in plaintiffs' recovery and that the fee exerted no downward pressure on the class award. *Mygrant*, 2019 WL 4620367 at *4 (S.D. Ala. 2019); *Williams v.*

*Omainsky*, 2017 WL 390272 at *6 (S.D. Ala. 2017); *Thomas v. Port II Seafood & Oyster Bar, Inc.*, 2016 WL 5662032 at *4 (S.D. Ala. 2016). As these cases reflect, this situation is presented when the question of attorney's fees is addressed, and the amount negotiated, only after the parties have reached agreement on class recovery. *See also Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) ("[T]he best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.").

The parties, however, do not represent that attorney's fees were addressed only after agreement was reached as to class recovery. The structure of the settlement – a "common fund"[5] with the defendant's maximum exposure a flat $73,000 and counsel's fee a flat 40% of that figure – would make any such representation suspect. It would seem exceedingly unlikely that the parties first agreed to the apparently random figure of $40,935 as class compensation and only then brought up attorney's fees. The parties themselves describe the $40,935 allocated to payment of claims as the "remainder" left over after attorney's fees, costs, and service awards. (Doc. 35 at 7).

Because class recovery and attorney's fees were not negotiated separately and sequentially, a conflict of interest at least potentially existed, and the class's recovery was at least potentially depressed as a result. *See Camden I Condominium Association, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("[A] key element of the common fund case is that fees … are taken from the fund or damage recovery (fee spreading)."); *Hurt v. RT Pizza Inc.*, 2021 WL 5413668 at *3 (M.D. Ga. 2021) ("[T]he recovery of attorneys' fees from a common fund, on its face, seems to involve a reduction of a plaintiff's damages award."); *Williams v. Coventry Health Care, Inc.*, 2018 WL 1466395 at *4 (M.D. Fla. 2018) ("[I]n cases where one lump sum amount is offered by the defendants to cover

---

[5] This is the parties' description of their agreement. (Doc. 37 at 3, 8).

5

both the plaintiff's damages and the attorneys' fees[,] there is a greater potential for a conflict to arise.").[6] The parties therefore must demonstrate the reasonableness of the fee award.

A number of sister courts within the Eleventh Circuit have evaluated the reasonableness of an agreed fee award in a settled FLSA case involving a common fund using the analysis set forth in *Camden I*.  This Court has done likewise. *Warren v. Cook Sales, Inc.*, 2017 WL 325829 at *9 (S.D. Ala. 2017).[7]  *Camden I*, however, involved a class action raising state law claims, 946 F.2d at 770, not a collective action under the FLSA.  While *Camden I* held that "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class," using the *Johnson* factors and others for guidance, it also provided that "[t]he lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards." *Id*. at 774-75.  Which analysis to employ thus would appear to turn on whether attorney's fees agreed to by the parties as part of the settlement of an FLSA claim constitute "statutory fee-shifting awards."

The FLSA provides that a defendant violating its provisions shall be liable to the plaintiffs in the amount of their unpaid minimum wages or overtime compensation, plus liquidated damages.  The statute continues that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  The *Silva* Court quoted this statutory language, declared that "FLSA requires judicial review of the reasonableness of counsel's legal fees," and

---

[6] As long as counsel is advocating for a larger common fund, there is arguably no conflict of interest, since both he and his clients may benefit from an expanded pie.  Once the defendant refuses to increase the common fund, however, the pie is fixed, and counsel has an incentive to retain a larger portion of that fixed amount at the expense of his client.

[7] The parties in *Warren* requested the Court to evaluate attorney's fees under the *Camden I* framework.  *Warren v. Cook Sales, Inc.*, Civil Action No. 15-603-WS-M, Doc. 57 at 19.

concluded that a district court "ha[s] a duty to review the compromise of [a plaintiff's] FLSA claim and to award a reasonable attorney's fee to [the plaintiff's] counsel." 307 Fed. Appx. at 351. The parties in *Silva* had agreed to a 40% attorney's fee.[8] *Silva* thus indicates that FLSA attorney's fees, even in the context of a settlement in which attorney's fees are agreed, constitute statutory fee-shifting awards.[9]

The parties have provided the Court insufficient information and evidence with which to gauge the reasonableness *vel non* of a 40% attorney's fee (under the common fund methodology) or of a $29,200 award (under the statutory fee-shifting methodology).

A lodestar fee is the product of hours reasonably expended times a reasonable hourly rate. *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). There is no evidence of either before the Court. Instead, the parties simply state that plaintiff's counsel has incurred approximately $16,500 in fees and expenses to date. (Doc. 37 at 8). The Court cannot tell from this snippet how many hours counsel has billed, what she did during those hours, what hourly rate she is employing, or why her rate is reasonable.

The parties further state that counsel will incur additional attorney's fees, as the settlement agreement contemplates her appointment as the settlement administrator. (Doc. 37 at 8). The settlement agreement actually provides for appointment of counsel's law firm. (Doc. 35 at 5). Either way, the parties have not explained why it is reasonable to plump up an attorney's fee award by having a lawyer and/or her law firm perform the mostly administrative activities of a settlement administrator, when there is no shortage of private firms providing such services. Nor have they explained why it is reasonable to award over $14,000 to

---

[8] *Silva v. Miller*, 547 F. Supp. 2d 1299, 1304 (S.D. Fla. 2008).

[9] The parties themselves rely on *Silva* and Section 216(b) as the basis for a fee award. (Doc. 37 at 7).

perform such duties[10] when the maximum amount to be distributed is barely $40,000 and the number of potential opt-ins is only 186. (Doc. 37 at 2).[11] This is especially true given that lawyer time spent on paralegal-level activity can be compensated only at the paralegal rate, and lawyer time spent on clerical-level activity cannot be compensated at all. *Lee v. Krystal Co.*, 918 F. Supp. 2d 1261, 1270 & n.13 (S.D. Ala. 2013).

"The majority of common fund fee awards fall between 20% and 30% of the fund." *Camden I*, 946 F.2d at 774. In practice, district courts have considered 25% as a benchmark percentage, which may be adjusted up or down depending on the legally relevant circumstances. *Id*. at 775. The 40% fee proposed here falls for north of that benchmark, and the parties have identified nothing that could justify a substantial upward adjustment to the reasonable percentage recovery.

### 2. Releases.

The settlement agreement contemplates that the plaintiff and opt-in plaintiffs will release the defendants and certain others "from all known and unknown wage and compensation claims arising on or before March 29, 2021 from the facts pled in the Complaint." (Doc. 35 at 12). The release includes claims arising under local, state, or federal law. (*Id*.). The plaintiff will additionally release "all known and unknown claims relating to his employment." (*Id*. at 13).

This Court has declined to preliminarily approve proposed settlements requiring releases that extend beyond FLSA claims, absent assurance that any plaintiff or opt-in plaintiff seeking advice and counsel regarding such a release, the

---

[10] If counsel's fees and expenses to date are $16,500, and expenses are $1,405, her fees to date are approximately $15,100 – over $14,000 below the proposed $29,200.

[11] In *Warren*, the settlement administrator administered a net fund of almost $300,000, involving 179 plaintiffs and potential opt-ins, for just over $10,000. 2017 WL 325829 at *1, *3, *7.

claims they may be releasing, and their value, will receive it. *Mygrant*, 2019 WL 4620367 at *4-5; *Mygrant*, Civil Action No. 18-264-WS-MU, Doc. 63 at 2-3). The parties have provided no such assurance.

In a related vein, the inclusive dates of the collective action are November 25, 2018 through November 25, 2020, yet the settlement agreement contemplates that participants in the settlement will release FLSA (and other wage and compensation) claims for the additional period of November 26, 2020 through March 29, 2021. (Doc. 35 at 12). The parties have not explained how a release of FLSA claims lying outside the scope of this lawsuit could pass muster under *Crabtree v. Volkert, Inc.*, 2013 WL 593500 at *5-6 (S.D. Ala. 2013).

Before the Court may rule on the motion for preliminary approval of settlement and the motion for distribution of notice, the parties must satisfactorily address the issues identified above, including the determination of a reasonable attorney's fee, appointment of counsel and/or her law firm as settlement administrator, and the scope of the releases. The parties are **ordered** to file, on or before **January 8, 2022**, appropriate supplemental briefing and/or evidentiary materials addressing these issues.

DONE and ORDERED this 17th day of December, 2021.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE